1

Paul G. Karlsgodt (*pro hac vice* forthcoming)
**BAKER & HOSTETLER LLP**

2

1801 California Street, Suite 4400
Denver, CO 80202

3

Phone: 303.861.0600

4

Fax: 303.861.7805
pkarlsgodt@bakerlaw.com

5

6

Michelle M. Buckley (AZ #030617)
**POLSINELLI PC**

7

One E. Washington St., Ste. 1200
Phoenix, AZ 85004

8

Phone: 602.650.2000
Fax: 602.264.7033

9

mmbuckley@polsinelli.com

10

*Attorneys for Defendant Yuma Regional Medical Center*

11

12

**IN THE UNITED STATES DISTRICT COURT**

13

**FOR THE DISTRICT OF ARIZONA**

14

Arturo Rivera; Cory Troy; Emily Troy;
Haley Manobianco-Reily; Michael Reily;

Case No.

15

and Molly Reily, individually and on
behalf of all others similarly situated,

16

**NOTICE OF REMOVAL**

17

Plaintiffs,

18

v.

19

Yuma Regional Medical Center,

20

Defendant.

21

22

        PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446,

23

and 1453 Yuma Regional Medical Center ("YRMC" or "Defendant"), hereby removes this

24

action filed by Arturo Rivera, Cory Troy, Emily Troy, Haley Manobianco-Reily, Michael

25

Reily, and Molly Reily ("Plaintiffs"), individually and on behalf of all others similarly

26

situated, from the Superior Court of the State of Arizona in and for the County of Yuma,

27

Arizona, where it is now pending, to the United States District Court for the District of

28

Arizona.  In support of removal, YRMC states as follows:

84827539.1

**JURISDICTION**

1.     This is a civil action over which the Court has original subject matter jurisdiction under 28 U.S.C. § 1332.  Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

2.     This Court is in the judicial district and division embracing the place where the state court case was brought and is pending.  Thus, this Court is the proper district court to which this case should be removed.  28 U.S.C. §§ 1441(a), 1446(a).

**BACKGROUND AND TIMELINESS OF REMOVAL**

3.     On June 28, 2022, Plaintiffs, on behalf of themselves and, purportedly, all others similarly situated, filed a filed a Class Action Complaint (the "Complaint") against YRMC in Arizona State Court, Yuma County Superior Court, Case No. S-1400-CV-202200360 (the "State Court Action").  Plaintiffs filed the Complaint as a putative class action.

4.     On July 22, 2022, Plaintiffs served upon YRMC—and YRMC signed—a request for Waiver of Service.  Plaintiffs also provided YRMC with copies of the Summons and Complaint filed in the Yuma County Superior Court matter.  Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all documents received in the State Court Action by YRMC are attached hereto as Exhibits.

5.     Pursuant to Local Rule 3.6(b), attached are true and correct copies of all pleadings and other documents previously filed in the State Court Action, including the most recent state court docket (**Exhibit A**); the operative Complaint (**Exhibit B**); service documents (*i.e.*, Summons and executed Waiver of Service) (**Exhibit C**); Certificate of Compulsory Arbitration (**Exhibit D**); Demand for Jury Trial (**Exhibit E**); and Civil Cover Sheet (**Exhibit F**).

6.     No further pleadings or documents (*i.e.*, answers, state court orders terminating or dismissing parties, notices of appearance, responses, or replies to pending motions) have been filed in the State Court Action.

7.     The Supplemental Civil Cover Sheet required by Local Rule 3.6(a) is

– 2 –

84827539.1

1  attached hereto as **Exhibit G**.

2         8.     A verification by counsel for YRMC that true and correct copies of all

3  pleadings and other documents filed in the State Court Action is attached hereto as **Exhibit**

4  **H**.

5         9.     This removal is timely because YRMC filed this removal within 30 days after

6  being served with and executing the Waiver of Service.  *See* 28 U.S.C. § 1446(b) (notice

7  of removal shall be filed within 30 days "after receipt by the defendant, by service of

8  otherwise, of a copy of the initial pleading . . ."); *Murphy Bros. v. Michetti Pipe Stringing,*

9  *Inc*., 56 U.S. 344, 348 (1999) (time period for removal begins when defendant is served);

10  *Lacey v. Malandro Commc'n, Inc.,* No. CV–09–01429–PHX–GMS, 2009 WL 4755399,

11  \*3 (D. Ariz. Dec. 8, 2009) ("[W]here service of the initial complaint is waived, service of

12  process is considered to be effective from the time that service is formally waived.") (citing

13  Ariz. R. Civ. P. 4.2(d)(4) ("When the plaintiff files a waiver of service with court, the action

14  shall proceed . . . as if the summons and complaint had been served at the time of filing the

15  waiver. . . .")).

16  **CAFA JURISDICTION**

17        10.   Basis of Original Jurisdiction.  This Court has original jurisdiction over this

18  action under CAFA (codified in pertinent part at 28 U.S.C. § 1332(d)).  Section 1332(d)

19  provides that a district court shall have original jurisdiction over a class action with one

20  hundred (100) or more putative class members in which the matter in controversy, in the

21  aggregate, exceeds the sum or value of $5,000,000, and any member of the putative class

22  is citizen of a different state than that of the defendant.  § 1332(d)(1)-(2)(A); *Yocupicio v.*

23  *PAE Grp., LLC*, 795 F.3d 1057, 1059 (9th Cir. 2015) (quoting *Dart Cherokee Basin*

24  *Operating Co., LLC v. Owens*, 574 U.S. 81, 84-85 (2014)).

25        11.   As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), YRMC

26  may remove the State Court Action to federal court under CAFA because: (1) this action

27  is pled as a class action; (2) the putative class includes more than one hundred (100)

28  members; (3) "minimal diversity" exists, *i.e.*, members of the putative class are citizens of

– 3 –

1  a state different from that of Defendant; and (4) the matter in controversy, in the aggregate,

2  exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See Serrano v.*

3  *180 Connect, Inc.*, 478 F.3d 1018, 1020 (9th Cir. 2007) (citation omitted).

4  **THIS ACTION IS PLED AS A CLASS ACTION**

5       12.    CAFA defines a "class action" as "'any civil action filed under rule 23 of the

6  Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure

7  authorizing an action to be brought by 1 or more representative persons as a class action.'"

8  *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l*

9  *Union, AFL-CIO, CLC v. Shell Oil Co., et al.*, 602 F.3d 1087, 1089 (9th Cir. 2010) (quoting

10  28 U.S.C. § 1332(d)(1)(B)).

11       13.    Plaintiffs bring this action as a "class action" and seek certification of a class

12  pursuant to Arizona Rule of Civil Procedure 23.  [Compl., ¶ 45.]  Because Arizona Rule of

13  Civil Procedure 23 is a "similar State statute authorizing an action to be brought by 1 or

14  more representatives as a class action" as "Arizona Rule of Civil Procedure 23 'is identical

15  to Federal Rule of Civil Procedure 23,'" *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524,

16  533 (9th Cir. 2011) (citation omitted), the first CAFA requirement is satisfied, [*see* Compl.,

17  ¶¶ 45-46 (bringing action "as a class action pursuant to Rule 23 of the Arizona Rules of

18  Civil Procedure" and defining class as "[a]ll persons whose [personally identifiable

19  information ('PII') and personal health information ('PHI'), *i.e.*,] PII/PHI[,] was accessed

20  by unauthorized persons in the Data Breach, including all persons who were sent notice of

21  the Data Breach.")].

22  **THE PUTATIVE CLASS INCLUDES AT LEAST ONE HUNDRED (100)**
**MEMBERS**

23
24       14.    Plaintiffs allege that, "[o]n or about April 25, 2022, YRMC determined that

     unauthorized individuals had executed a ransomware attack by gaining access to its
25
     network systems and copying and removing the PII/PHI of Plaintiffs and Class Members
26
     between April 21, 2022 and April 25, 2022[.]"  [Compl., ¶ 3.]  Plaintiffs also claim that,
27
     following investigation of the ransomware attack, YRMC determined that "information
28

– 4 –

84827539.1

1   disclosed in the [ransomware attack] include[d] names, Social Security numbers, health

2   insurance information, medical information, and demographic information." [*Id.* at ¶ 1.]

3   Plaintiffs further aver that the April 2022 ransomware attack resulted in unauthorized

4   access to the personal information and medical records of approximately 737,448

5   individuals, including Plaintiffs (the "Data Incident"). [*Id.*]

6       15.    Plaintiffs now purport to bring "this class action lawsuit on behalf of

7   themselves and all persons "whose PII/PHI was [purportedly] accessed and disclosed"

8   during the of the Data Incident, and defines the putative class as "[a]ll persons whose

9   PII/PHI was accessed by unauthorized individuals in the Data [Incident], including all

10   persons who were sent a notice of the Data [Incident]." [*Id.* at ¶¶ 5, 46.]

11       16.    Further, Plaintiffs assert that approximately 737,448 individuals were

12   impacted by the Data Incident. [*Id.* at ¶ 1; *see also id.* at ¶¶ 24, 49 ("YRMC reported to

13   the United States Department of Health and Human Services that the [Data Incident]

14   affected 737,448 persons.").]

15       17.    YRMC sent breach notification letters to approximately 720,217 individuals.

16       18.    Based on the above, the number of putative class members exceeds the

17   statutorily-required minimum of 100 individuals. *See Kuxhausen* v. *BMW Fin. Servs. NA*

18   *LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) (finding that where a plaintiff alleges that the

19   estimated number of putative class members in the complaint is greater than 200, "[n]o

20   investigation" or "further inquiry" is necessary for the court to conclude that CAFA

21   numerosity is satisfied).

22               **MINIMAL DIVERSITY OF CITIZENSHIP EXISTS**

23       19.    Pursuant to 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original

24   jurisdiction" over a "class in which . . . ***any member of the class of plaintiffs*** is a citizen

25   of a State different from ***any defendant*." (emphasis added). *See also Broadway Grill,*

26   *Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017) (stating that "CAFA only requires

27   what is termed 'minimal diversity,'" *i.e.*, when "any member of a class of plaintiffs is a

28   citizen of a state different from any defendant") (citation omitted). Accordingly, if any

– 5 –

84827539.1

1    member of the purported class is a citizen of a state different than the state of citizenship

2    of any defendant, then minimal diversity exists.  *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d

3    1223, 1226 (9th Cir. 2019).

4        20.    YRMC's Citizenship.  Pursuant to 28 U.S.C. § 1332(c), a corporation is

5    "deemed a citizen of its place of incorporation and the location of its principal place of

6    business."  *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987,

7    990 (9th Cir. 1994); 28 U.S.C. § 1332(c)(1).  A corporation's "'principal place of business'

8    refers to the place where the corporation's high level officers direct, control, and coordinate

9    the cooperation's activities."  *Morris v. Embry-Riddle Aeronautical Univ. Inc.*, No. CV-

10    21-08102-PCT-DWL, 2021 WL 2773094, at *1 (D. Ariz. July 2, 2021) (quoting *Hertz

11    Corp. v. Friend*, 559 U.S. 77, 80 (2010)).  "This place, metaphorically dubbed the

12    corporation's 'brain' or 'nerve center,' 'will typically be found at a corporation's

13    headquarters,' 'provided that the headquarters is the actual center of direction, control, and

14    coordination[.]'"  *Id.* (quoting *Hertz Corp.*, 559 U.S. at 80-81, 93, 95).

15        21.    YRMC is a corporation incorporated under the laws of Arizona with its

16    headquarters at 2400 South Avenue A, Yuma, 85364.  [Compl., ¶ 13.]  Because YRMC is

17    incorporated in Arizona and maintains its principal place of business in Arizona, YRMC

18    is a citizen of Arizona for purposes of CAFA.  [*Id.*]

19        22.    Plaintiffs' and the Putative Class Members' Citizenship.    For diversity

20    purposes, an individual is a "citizen" in the state in which he or she is domiciled.  *Adams

21    v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020); 28 U.S.C. § 1332(a)(1).

22    "One's domicile is his or her 'permanent home'—that is where (i) she resides, (ii) 'with

23    the intention to remain there or to which she intends to return.'"  *Adams*, 958 F.3d at 1221

24    (quoting *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013)); *see also

25    Agullard v. Principal Life Ins. Co.*, 685 F. Supp. 2d 947, 950 (D. Ariz. 2010) (citation

26    omitted).  A person's state of residency is not equivalent to domicile (nor, therefore,

27    citizenship), although residency is one factor to be considered in the domicile analysis.

28    *Adams*, 958 at 1221 (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir.

84827539.1

1   2001)); *see also Ehrman*, 932 F.3d at 1227 (citations omitted); *Lending Co., Inc. v.*

2   *Craythorn*, No. CV 12–01205–PHX–NVW, 2012 WL 3585411, at *1 (D. Ariz. Aug. 20,

3   2012) (citation omitted).

4         23.    As alleged in the Complaint, Plaintiffs are all "Arizona resident[s]."

5   [Compl., ¶¶ 7-12.]  Accordingly, absent information to the contrary, Plaintiffs are citizens

6   of Arizona. *See Adams*, 958 at 1221 (citing *Kanter*, 265 F.3d at 857); *Lending Co., Inc.*,

7   2012 WL 3585411, at *1 (citation omitted).

8         24.    Plaintiffs, however, also seek to represent a class that includes "[a]ll persons

9   whose PII/PHI was accessed by unauthorized persons in the Data [Incident], including all

10  persons who were sent notice of the Data [Incident]."  [*Id.* at ¶ 46; *see also id.* at ¶¶ 24, 49

11  ("YRMC reported to the United States Department of Health and Human Services that the

12  [Data Incident] affected 737,448 persons.").]  To date, YRMC has sent notice of the alleged

13  Data Incident to individuals with addresses in all 49 states other than Arizona, multiple

14  U.S. territories, and Canada and Mexico.

15        25.    Therefore, the class, as defined by Plaintiffs, includes individuals who, in the

16  absence of other evidence to the contrary, are residents and domiciled in—and thus citizens

17  of—states other than Arizona, the state of citizenship of YRMC.  Said differently, because

18  at least one putative class member is a citizen of a state other than Arizona, "minimal

19  diversity" is established pursuant to CAFA.  *See Abrego v. Dow Chem. Co.*, 443 F.3d 676,

20  684 (9th Cir. 2006) (citing 28 U.S.C. § 1332(d)(2)(A)).

21        **THE AMOUNT IN CONTROVERSY EXCEEDS THE CAFA THRESHOLD[1]**

22        26.    Where a complaint does not specify the amount of damages sought, as is the

23  case with Plaintiffs' complaint, the removing defendant must prove by a preponderance of

24  the evidence that the jurisdictional amount-in-controversy is satisfied.  28 U.S.C. §

25

26  [1] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and

27  cannot be construed as an admission that Plaintiffs or putative class members can state or have stated a claim or that they are entitled to damages in any amount.  YRMC denies

28  liability, denies Plaintiffs and/or Class Members are entitled to recover any amount, and denies that a class can be properly certified in this matter.

84827539.1

1446(c)(2)(b).  The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement.  *Dart Cherokee Basin Operating Co.*, 574 U.S. at 89.  The amount in controversy is "presumptively satisfied" unless "it appears to a 'legal certainty' that the plaintiff cannot actually recover that amount." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 595, 699 (9th Cir. 2007) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402 (9th Cir. 1996)). Furthermore, in determining the amount in controversy under CAFA, the claims of all plaintiffs are aggregated to determine if the amount in controversy is more than $5,000,000, *Burge v. Freelife Int'l, Inc.*, No. CV 09–1159–PHX–JAT, 2009 WL 3872343, at *2 (D. Ariz. Nov. 18, 2009) (citing 28 U.S.C. § 1332(d)(6)), including "'class members' . . . (named or unnamed) who fall within the definition of the *proposed* or certified class,'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (citation omitted) (emphasis in original).  In determining the amount in controversy, the Court must accept "all allegations contained in the complaint as true and assumes the jury will return a verdict in plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017).  The "jurisdictional threshold is not defeated merely because it is equally possible that the damages [ultimately awarded] might be less than the . . . requisite amount." *Avila v. Kiewit Corp.*, 789 F. App'x 32, 33 (9th Cir. 2019) (citation and internal punctuation marks omitted).

27.     Here, Plaintiffs seek damages in the form of "declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law."  [Compl., ¶ 6.]  Plaintiffs also claim they and Class members have suffered injury and damages, including, but not limited to,

> (i) a substantially increased risk of identity theft and medical theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII/PHI; (iii) breach of confidentiality of their PII/PHI; (iv) deprivation of the value of their PII/PHI, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data [Incident],

– 8 –

1
2

including the increased risks of identity theft and medical identity theft that they face and will continue to face; and (vi) overpayment for the services that were received without adequate data security.

3
4
5
6
7
8
9
10
11

[*Id.* at ¶ 44.] Plaintiffs also claim that they are entitled to other "monetary relief, including . . . restitution, and disgorgement"; "injunctive relief designed to prevent YRMC from experiencing another data breach by adopting and implementing best data security practices to safeguard PII/PHI and to provide or extend credit monitoring services and similar services to protect against all types of identity theft and medical identity theft"; "pre-judgment and post-judgment interest to the maximum extend allowable"; "attorneys' fees, costs, and expenses as allowable" and "such other favorable relief as allowable under law." [*Id.* at Prayer for Relief(B)-(F).]

12
13

28.    As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5,000,000.

14
15
16

29.    <u>Claims for Negligence and Negligence *Per Se*</u>.  Plaintiffs bring claims for negligence and negligence *per se*.  [Compl., ¶¶ 55-62 (negligence); ¶¶ 63-71 (negligence *per se*).]

17
18
19
20
21
22
23
24
25

30.    Plaintiffs allege that YRMC "owed a duty to Plaintiffs and all other Class members to exercise reasonable care in safeguarding and protecting their PII/PHI in its possession, custody, or control."  [*Id.* at ¶ 56.]  Plaintiffs assert that YRMC had duties, including, *inter alia*, responsibility to use reasonable security measures under the common law, Section 5 of the Federal Trade Commission Act ("FTC"), 15 U.S.C. § 45, and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and in particular 45 C.F.R. Part 160 and Part 164, *i.e.*, the "HIPAA Privacy Rule" and "HIPAA Security Rule," to protect Plaintiffs' and Class Members' information from unauthorized disclosure. [*Id.* at ¶¶ 59, 64-6.]

26
27
28

31.    Plaintiffs further allege that YRMC breached these and other duties, and was therefore negligent, "by failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' PII/PHI by failing to design, adopt, implement, control,

– 9 –

84827539.1

1    direct, oversee, manage, monitor, and audit appropriate data security processes, controls,

2    policies, [etc.]"  [*Id.* at ¶ 59.]

3    32.    Plaintiffs further allege that YRMC's failure to comply with Section 5 of the

4    FTC and the other data security measures outlined under HIPAA constitutes negligence

5    *per se*.  [*Id.* at ¶¶ 67-9.]

6    33.    As a result of YRMC's alleged negligence and negligence *pe se*, Plaintiffs

7    claim they and Class members have suffered or will suffer "economic damages and other

8    injury and actual harm" as described throughout the Complaint.  [*Id.* at ¶¶ 62, 71.]

9    Plaintiffs assert that they are therefore entitled to, among other things, declaratory relief,

10   injunctive relief, punitive damages, monetary damages, equitable relief, and the like.  [*Id.*

11   at ¶¶ 6, 44, 62, 71.]

12   34.    The Complaint contains no allegations that would support or suggest the

13   amount in damages Plaintiffs or any of the putative class members allegedly sustained as

14   a consequence of YRMC's negligence or negligence *per se*.  However, because Plaintiffs

15   seek injunctive relief specifically requesting that YRMC be required "to provide or extend

16   credit monitoring services and similar services to protect against all types of identity theft

17   and medical identity theft," [*id.* at Prayer for Relief(C)], one option for assigning a value

18   to these damages is through the cost of credit monitoring.

19   35.    Three prominent identity-protection agencies (Equifax, IDShield, and

20   Experian) advertise monthly rates for credit monitoring services ranging from $14.95 to

21   $19.99 per person per month.  For example, IDShield Individual offers one-bureau credit

22   monitoring with an unlimited service guarantee, dark web internet monitoring, data breach

23   notifications, full-service restoration when theft occurs, and 24/7 emergency assistance,

24   among other services, for $14.95 per month for one individual.[2]  Similarly, both Equifax[3]

25   
26   [2] See *IDShield Plans & Pricing*, https://www.idshield.com/plans-and-pricing (last visited July 24, 2022); *see also IDShield Individual*, https://checkout.idshield.com/?plan=IDSI&freetrial=true&region=TX (last visited August 12, 2022).

27   [3] *See Equifax*, https://www.equifax.com/equifax-complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=502355994880&DS3_KIDS=p50281164756&campaignid=71700000061086345&sakwid=43700050281

28   

84827539.1

and Experian[4] offer products that provide 3-Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 and $19.99 a month, respectively. Multiplying the cost of providing one month of credit-monitoring services at $14.95 (the cheapest of the three products) by the number of alleged putative class members, the amount in controversy for just one month of credit monitoring is approximately $10,767,244 (calculated as 720,217 individuals notified of the Data Incident, times 1 month, times $14.95 per month). And if YRMC were to use the approximate number of total impacted individuals in the Data Incident as alleged in the Complaint—737,448 individuals—the total amount YRMC could be required to pay in credit monitoring damages would be approximately $11,024,847 (calculated as 737,448 individuals impacted, times 1 month, times $14.95 per month).

36. Accordingly, Plaintiffs' and the putative class members' potential credit-monitoring damages alone far exceed the amount in controversy threshold of $5,000,000. Combined with their other alleged negligence and negligence *per se* damages, the total amount in controversy is well in excess of $5,000,000.

37. Violation of the Arizona Consumer Fraud Act: Plaintiffs also allege that YRMC violated the Arizona Consumer Fraud Act ("ACFA"), Ariz. Rev. Stat. § 44-1521, *et seq.*, by engaging in unlawful practices in violation of the ACFA such as "failing to implement and maintain reasonable security measures to protect and secure its patients' PII/PHI in a manner that complied with applicable laws, regulations, and industry standards and failing to inform Plaintiffs and Class members that it would not adequately secure their

---

164756&gclid=EAIaIQobChMIzpzAneG28wIVS9KzCh3vCA_MEAAYASAAEgIjevD_BwE&gclsrc=aw.ds (last visited August 12, 2022).

[4] *See Experian CreditLock*, https://www.experian.com/lp/creditlock.html?bcd=ad_c_sem_427_515842009606&k_id=_k_EAIaIQobChMIzZ63geO28wIVTR-tBh0rgAUsEAAYASABEgIWwfD_BwE_k_&k_kw=aud-422897489015:kwd-317312162328&k_mt=e&pc=sem_exp_google&cc=sem_exp_google_ad_858684474_43905679139_515842009606_aud-422897489015:kwd-317312162328_e___k_EAIaIQobChMIzZ63geO28wIVTR-tBh0rgAUsEAAYASABEgIWwfD_BwE_k_&ref=identity&awsearchcpc=1&gclid=EAIaIQobChMIzZ63geO28wIVTR-tBh0rgAUsEAAYASABEgIWwfD_BwE (last visited August 12, 2022).

– 11 –

84827539.1

1  PII/PHI." [Compl., ¶¶ 82-9.] Plaintiffs further state that YRMC violated the ACFA

2  because "YRMC makes representations to its patients that their PII/PHI will remain

3  private, as evidenced by [YRMC's] Notice of Privacy Practices," but allege that YRMC

4  failed to keep such information private. [*Id.* at ¶ 86.]

5         38.    As a result of YRMC's purported ACFA violations, Plaintiffs claim they

6  have ben damaged/injured because "(i) they paid—directly or through their insurers—for

7  data security protection they did not receive; (ii) they face a substantially increased risk of

8  identity [and medical] theft . . . (iii) their PII/PHI was improperly disclosed to unauthorized

9  individuals; (iv) the confidentiality of their PII/PHI has been breached; (v) they were

10  deprived of the value of their PII/PHI . . .; (vi) [they have suffered] lost time and money

11  incurred to mitigate the and remediate the effects of the Data [Incident] . . .; and (vii)

12  overpayment for the services that were received without adequate security." [*Id.* at ¶¶ 88-

13  9.]

14         39.    Although Plaintiffs' Complaint contains no allegations that would support or

15  suggest the amount in damages they or any of the putative class members allegedly

16  sustained as a result of YRMC's alleged violation of the ACFA, the ACFA permits an

17  injured plaintiff to recover actual damages and punitive damages if he or she proves

18  violation of the statute. *See Howell v. Midway Holdings, Inc.*, 362 F. Supp. 2d 1158, 1165

19  (D. Ariz. 2005) ("Punitive damages are available under the ACFA.").

20         40.    Accordingly, considering Plaintiffs' and putative Class members' damages

21  for violation of the ACFA, which, as described above, can include, among other damages,

22  actual damages, punitive damages, and disgorgement, combined with the other damages

23  alleged in the Complaint, further demonstrate that the amount in controversy far exceeds

24  CAFA's $5,000,000 threshold.

25         41.    <u>Prayer for Other Monetary and Injunctive Relief</u>. Plaintiffs also pray for

26  additional monetary and injunctive relief. [Compl., Prayer for Relief (A)-(F).] For

27  example, in addition to the relief requested for YRMC's alleged violation of each of the

28  claims asserted in the Complaint, Plaintiffs pray for "monetary relief, including . . .

– 12 –

1    restitution, and disgorgement"; "pre-judgment and post-judgment interest to the maximum

2    extend allowable"; "attorneys' fees, costs, and expenses as allowable'" and "such other

3    favorable relief as allowable under law." [*Id.* at Prayer for Relief(B)-(F).]  These requests

4    for relief, combined with the other damages alleged in the Complaint, further demonstrate

5    that the amount in controversy exceeds the CAFA threshold.

6         42.    Plaintiffs also pray for "injunctive relief designed to prevent YRMC from

7    experiencing another data breach by adopting and implementing best data security

8    practices to safeguard PII/PHI and to provide or extend credit monitoring services and

9    similar services to protect against all types of identity theft and medical identity theft," etc.

10    [Compl., Prayer for Relief(C).]

11         43.    "'In actions seeking declaratory or injunctive relief, it is well established that

12    the amount in controversy is measured by the value of the object of the litigation'" or the

13    "value of the thing 'sought to be accomplished by the action.'"  *Van Dyke v. Retzlaff*, No.

14    CV-18-04003-PHX-SMB, 2019 WL 276037, at *2 (D. Ariz. Jan. 22, 2019) ("'In actions

15    seeking declaratory or injunctive relief, it is well established that the amount in controversy

16    is measured by the value of the object of the litigation.'") (quoting *Corral v. Select

17    Portfolio*, 878 F.3d 770, 775 (9th Cir. 2017)); *Pagel v. Dairy Farmers of Am., Inc.*, 986 F.

18    Supp. 2d 1151, 1159 (C.D. Cal. 2013) (citation omitted).  In determining the "value of the

19    object of the litigation," courts in the Ninth Circuit have adopted the "either viewpoint

20    rule," which provides that a court should consider "'the pecuniary result to either party

21    which the judgment would directly produce'" when determining the amount in

22    controversy.  *Van Dyke*, 2019 WL 276037, at *2 (quoting *In re Ford Motor Co./Citibank

23    (S. Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001)).  "'Under this rule, either the

24    plaintiff's potential recovery or the potential cost to the defendant of complying with the

25    injunction must exceed the jurisdictional threshold.'"  *Id.* (quoting *Stelzer v. CarMax Auto

26    Superstores Cal., LLC*, No. 13–cv–1788 BAS (JMA), 2014 WL 3700269, at *3 (S.D. Cal.

27    July 24, 2014)).  In class actions removed under CAFA, the Court may aggregate each

28    class member's claims for injunctive relief (and respective damages) to determine whether

– 13 –

84827539.1

1   the aggregate cost to the defendant of complying with any injunctive relief requested

2   exceeds the amount in controversy threshold.  *Pagel*, 986 F. Supp. 2d at 1160 (citation

3   omitted).

4        44.    Applied here, any potential recovery to Plaintiffs, including "injunctive and

5   equitable relief as necessary to protect the interests of Plaintiffs and Class Members," to

6   the extent such relief exists, combined with the other damages alleged in the Complaint,

7   underscores that the amount in controversy is greater than $5,000,000.

8        45.    From the "viewpoint" of Defendant, the aggregate cost to YRMC of

9   complying with Plaintiffs' requests for injunctive relief would involve potentially

10  overhauling its state and federal regulatory privacy and cyber security policies,

11  implementing new training procedures, and potentially hiring outside auditors and third-

12  party forensic firms to conduct testing and reviews of YRMC's systems and network in

13  order to comply with Plaintiffs' request that YRMC implement "best data security practices

14  to safeguard PII/PHI" specifically "designed to prevent YRMC from experiencing another

15  data breach."  [Compl., Prayer for Relief(C).]  The cost of modifying YRMC's privacy and

16  cyber security policies in order to "implement best data security practices," which, among

17  other things, could include instituting new training and hiring outside vendors, along with

18  the other injunctive and other monetary relief requested, and combined with the other

19  damages alleged in the Complaint, further underscores that the amount in controversy is

20  greater than $5,000,000.  *See, e.g.*, *Lokey v. CVS Pharmacy, Inc.*, Case No. 20-cv-04782-

21  LB, 2020 WL 5569705, at *5 (N.D. Cal. Sept. 17, 2020) (agreeing with defendant's

22  assessment that the cost of complying with plaintiff's requested injunctive relief was "at

23  least $3,888,363," when compliance potentially entailed "overhauling [the product at

24  issue] in some way," including by "removing the product from shelves and warehouses,

25  destroying existing inventory, developing new packaging, replenishing the inventory, and

26  changing the product's marketing and advertising scheme" and therefore finding the

27  injunctive relief costs, considered with the other damages alleged in the complaint,

28  exceeded the $5 million CAFA threshold).

– 14 –

84827539.1

46.   <u>Other Claims</u>.  In addition to the claims and related damages discussed above, Plaintiffs also assert claims for breach of fiduciary duty and unjust enrichment. [Compl., ¶¶ 72-5 (breach of fiduciary duty); ¶¶ 76-81 (unjust enrichment).]  Plaintiffs allege that they have suffered or will suffer damages related to these causes of action, including, but not limited to,

> (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data [Incident]; (v) the continued risk to their PII/PHI which remains in YRMC's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data [Incident]; and (vii) overpayment for the services that were received without adequate data security.

[*Id.* at ¶ 75.]

47.   Plaintiffs seek compensation for these alleged injuries and also assert that YRMC should be "compelled to provide for the benefit of Plaintiffs and Class members all unlawful proceeds received by it as a result of the conduct and Data [Incident] alleged [in the Complaint]."  [*Id.* at ¶¶ 44, 81, Prayer for Relief.]

48.   No allegations in the Complaint allow YRMC to calculate with specificity the amount of these alleged damages and relief.  However, YRMC underscores these allegations to the Court as further evidence that the amount in controversy exceeds $5,000,00, as already established above.  *See, e.g.*, *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020) (finding plaintiff's complaint "put more than $5 million in controversy" when he sued for "compensatory damages, punitive damages, and attorney's fees for a two year class period").

49.   Accordingly, because this case was pled as a class action, and because minimal diversity, class size, and the amount in controversy requirements of CAFA are satisfied, YRMC has properly removed the State Court Action to this Court.

50.   Indeed, based on the above, there is no "legal certainty" that Plaintiffs could

– 15 –

84827539.1

1   not recover an aggregate amount exceeding $5,000,000 required for CAFA removal. *See*

2   28 U.S.C. § 1332(d)(6); *Guglielmino*, 506 F.3d at 699; *Sanchez*, 102 F.3d at 402.

3   Accordingly, YRMC has properly removed the State Court Action to this Court.[5]

## **NOTICE**

5         51.     As required by 28 U.S.C. § 1446(d), YRMC is providing written notice of

6   the filing of this Notice of Removal to Plaintiffs and is filing a copy of this Notice of

7   Removal with the Clerk of the Yuma County Superior Court.

8        WHEREFORE, Defendant Yuma Regional Medical Center removes the State Court

9   Action from the Superior Court of Arizona, Yuma County, to the United States District

10   Court for the District of Arizona.

11        Dated this 19th day of August, 2022.

13                  By: *s/ Michelle M. Buckley*

14                    Michelle M. Buckley
                       **POLSINELLI PC**

15                    One E. Washington St., Ste. 1200
                       Phoenix, AZ 85004

17                    Paul G. Karlsgodt (*pro hac vice* forthcoming)
                       **BAKER & HOSTETLER LLP**

18                    1801 California Street, Suite 4400
                       Denver, Colorado 80202

20                  *Attorneys for Defendant Yuma Regional Medical Center*

---

[5] The party opposing removal jurisdiction has the burden of proving that a discretionary or mandatory exception under CAFA applies. *Serrano*, 478 F.3d at 1024 ("[A]lthough the removing party bears the initial burden of establishing federal jurisdiction under § 1332(d)(2), once federal jurisdiction has been established under that provision, the objecting party bears the burden of proof as to the applicability of any express statutory exception."). This Notice of Removal does not address, nor concede, any issues related to the CAFA jurisdiction exceptions.

– 16 –

84827539.1